MAURER *v.* GREENING NURSERY CO.

1. CONTRACTS—STATUTES—CONSTRUCTION.
   A contract in violation of a statute is void, although not expressly declared so, and it is immaterial whether that which is forbidden is *malum in se* or merely *malum prohibitum.*

2. STATUTES—PARTNERSHIP CERTIFICATES—ASSUMED NAMES.
   Act No. 101, Pub. Acts 1907 (2 Comp. Laws 1915, § 6349 *et seq.*), requiring the filing of certificates by persons doing business under assumed names, and Act No. 164, Pub. Acts 1913 (2 Comp. Laws 1915, § 6354 *et seq.*), requiring the filing of certificates by copartnerships, were intended to inform the public as to whom it was dealing with and· thereby serve its convenience, and to prevent imposition and fraud.

3. CONTRACTS—PAYMENT—NONCOMPLIANCE WITH STATUTE.
   Payment under a partnership contract cannot be enforced by the partnership which, although it does not come within the proviso in Act No. 164, Pub. Acts 1913, has not filed the certificate required by such act, and it is immaterial that the debtor actually knew who the members of the copartnership were. KUHN, MOORE, and BROOKE, JJ., dissenting.

4. APPEAL AND ERROR — CONSTITUTIONAL LAW — QUESTIONS NOT RAISED ON TRIAL.
   The question of the constitutionality of a statute will not be considered by the Supreme Court, where such question was not raised in the court below.

Error to Monroe; Gilday, J.   Submitted April 3, 1917.   (Docket No. 20.)   Decided December 28, 1917. Resubmitted April 19, 1918.   Former ·opinion affirmed July 18, 1918.

Assumpsit by John Maurer and Charles A. Maurer, copartners as Maurer Brothers, against the Greening Nursery Company for an amount due on a building

contract.  Judgment for defendant on a directed verdict.  Plaintiffs bring error.  Affirmed.

*Thornton Dixon* (*Fred A. Baker*, of counsel), for appellants.

*Oliver J. Golden*, for appellee.

BIRD, J.  The plaintiffs entered into a contract to construct an office building for defendant in the city of Monroe.  When the building was constructed and the final payment was due some controversy arose concerning certain set-offs which defendant claimed. Being unable to adjust their differences amicably this suit was instituted.  Among other defenses made by defendant was the failure of plaintiffs to comply with either Act No. 101, Pub. Acts 1907 (2 Comp. Laws 1915, § 6349 *et seq.*), or Act No. 164, Pub. Acts 1913 (2 Comp. Laws 1915, § 6354 *et seq.*), requiring certificates to be filed with the county clerk by copartnerships and persons doing business under an assumed name.  Nothing was claimed for plaintiffs' failure to comply with Act No. 101, except to show that plaintiffs were not excused from compliance with Act No. 164 by having previously complied with Act No. 101.  The case went off on this question, the trial court holding that plaintiffs' failure to comply with Act No. 164 was a bar to any recovery.

1.  It is conceded by plaintiffs that they never complied with either act, and they recognize the fact that this court has held in *Cashin* v. *Pliter*, 168 Mich. 386 (134 N. W. 482, Am. & Eng. Ann. Cas. 1913C, 697), that a failure to comply with Act No. 101 was a bar to any recovery by the person in default, but an effort is made by counsel to distinguish the aims and purposes of this statute from those which gave rise to Act No. 164.  Counsel say in their brief:

"The act of 1913 requiring partnerships to register was not enacted to protect the public against fraud

and imposition or to safeguard the public health or morals. It has no such object; it is a mere regulation, designed to have record evidence of the membership of partnerships; it is nothing more than a convenience, to enable those who are not aware of the names of partners, composing a firm, to readily ascertain them."

And they argue that where the act prohibited is not *malum in se,* a contract made in violation thereof will not be declared void. The general rule appears to be that:

"Where a statute expressly declares that certain kinds of contracts shall be void, there is then no doubt of the legislative intention, and an agreement of the kind voided by statute is unlawful. The same is true where the contract is in violation of a statute, although not therein expressly declared to be void. It is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum.* 9 Cyc. p. 475, and cases."

The obvious purpose of both acts was to inform the public with whom it is dealing, and thereby serve its convenience and to prevent imposition and fraud. Prior to the passage of the acts it was neither wrong for one to do business under an assumed name, nor to trade under a copartnership name without disclosing his identity. It is wrong now only because it is prohibited by statute. It is true that contracts in violation of Act No. 164 are not therein expressly prohibited, but they are impliedly. The statute has imposed a penalty for the failure to file the required certificate, and by so doing it impliedly prohibits the making of any contract during the period of default. *Harris* v. *Runnels,* 12 How. (U. S.) 79; *Dudley* v. *Collier,* 87 Ala. 431 (6 South. 304, 13 Am. St. Rep. 55) ; *Buxton* v. *Hamblen,* 32 Me. 448; *Vanmeter* v. *Spurrier;* 94 Ky. 22 (21 S. W. 337) ; *Levinson* v. *Boas,* 150 Cal. 185 (88 Pac. 825, 12 L. R. A. [N. S.] 575,

11 Am. & Eng. Ann. Cas. 661) ; *Watrous* v. *Blair*, 32 Iowa, 58; *Despres, Bridges & Noel* v. *Zierleyn*, 163 Mich. 399 (128 N. W. 769).

Inasmuch as there is nothing in the language of Act No. 164 indicating that the legislature intended the penalty imposed should be the sole punishment for its violation, we are of the opinion that the general rule implying a prohibition from the imposition of the penalty should be applied and a like construction given to it as has been given to Act No. 101.

2. The argument is made that defendant was fully informed who constituted the plaintiff firm, and therefore it is estopped from raising this defense. The following cases are cited in support of this contention: *Missaukee Farm & Investment Co.* v. *Ferris*, 193 Mich. 286 (159 N. W. 490) ; *Sauer* v. *Construction Co.*, 179 Mich. 624 (146 N. W. 422). We think that neither of these cases supports the contention of counsel. In the first one cited it was held that Act No. 101 did not apply to copartnerships doing a banking business, but that such copartnerships were controlled by Act No. 160 of the Laws of 1859, and that what was done under that act was a substantial compliance with its provisions. In the second case cited it was held that the copartnership name was not an assumed name, and therefore did not come within the provisions of the act. The mere fact that a person dealing with a copartnership might know who the members of a copartnership were would not relieve them from filing a certificate in compliance with Act No. 164. To hold otherwise would be to destroy the usefulness of the act.

3. The constitutionality of the act is attacked under the "due process" clause of the Constitution, on the specific ground that the penalties imposed by the act are excessive. This question does not appear to have been presented to nor passed upon by the trial court.

In view of our rule that trial courts must be given an opportunity to pass upon questions before being raised in this court, we shall not consider it.

Being of the opinion that the trial court reached the right conclusion, the judgment must be affirmed.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.

ON REHEARING.

BIRD, J. The construction of Act No. 164 of the Public Acts of 1913, which is involved in this controversy, provides in section 1 that:

"No two or more persons shall hereafter be engaged in and 'carrying on any business as copartners, unless such persons shall first make and file with the county clerk of the county in which such copartnership business is or shall be located, a certificate in writing, to be signed by each, and verified by the affidavit of one of the members of said copartnership, setting forth the full name of each and every person composing said copartnership, and the residence of each, the name and style of the firm and the length of time for which it is to continue," etc.

Section 6 provides that:

"No two or more persons owning, carrying on or conducting or transacting business as aforesaid who shall fail to comply with the provisions of this act, shall each be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not less than ten dollars nor more than one hundred dollars, or by imprisonment in the county jail for a term not exceeding thirty days, or by both such fine and imprisonment, in the discretion of the court; and each day any person or persons shall violate any provision of this act, shall be deemed a separate offense."

After having admittedly violated this act and incurred its penalty plaintiffs ask the courts to enforce their contract made in violation thereof. That is the question to be determined. In the opinion heretofore

filed we declared the contract void because made in violation of law and declined to enforce it. *Ante,* 522 (165 N. W. 861). The question is one upon which there is some variance of opinion among the courts. The variance has been defined as follows:

"By some courts it is held that an agreement founded on or for the doing of such penalized act is void; in accordance with the view of Lord Holt in an old case: 'Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute, is a void contract, tho' the statute itself doth not mention that it shall be so, but only inflicts a penalty on the offender because a penalty implies a prohibition, tho' there are no prohibiting words in the statute.' "

Other courts have "regarded the question as one of legislative intent and declared the proper rule to be that the courts will look to the language of the statute, the subject-matter of which, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if from all these it is manifest that it was not intended to apply a prohibition or render the prohibited act void, the courts will so hold and construe the statute accordingly." 9 Cyc. p. 476.

This court, at least as early as the 98th Michigan, ranged itself upon the side of the courts which hold such contracts void, and refuse to enforce them. In *Niagara Falls Brewing Co.* v. *Wall,* 98 Mich. 158, this court refused to enforce a contract made in violation of the liquor statutes. In *Re Reidy's Estate,* 164 Mich. 167, a contract made in violation of the State pharmacy laws was denied enforcement and in so doing Mr. Justice MCALVAY said:

"It is a well-settled principle of law that all contracts which are founded on an act prohibited by statute under a penalty are void, although not expressly declared to be so." Citing cases.

Later Mr. Justice STEERE cited this language with approval in *Cashin* v. *Pliter,* 168 Mich. 386, and there-

in refused to enforce a contract made in violation of Act No. 101, Pub. Acts 1907.

In *Ferle* v. *City of Lansing*, 189 Mich. 501, this court refused to enforce a contract made in violation of the charter of the city of Lansing, and the case of *In re Reidy's Estate* was cited with approval by Chief Justice BROOKE, who said *inter alia:*

"The charter does not, in so many words, say that a contract made by the city shall be void if any member of the council or city official is interested in it; but it is void, nevertheless, inasmuch as the charter imposes a penalty for the making of such a contract."

For similar constructions see *Beemer* v. *Hughes*, 179 Mich. 110; *Sloman* v. *Bender*, 189 Mich. 258.

After taking the position for many years that such contracts are void and unenforceable, a position which is in keeping with the holdings of most of the State courts, we are of the opinion that no exception to the rule should be made in this case.

But it is suggested that if we are to construe this statute in this way it will open the door to designing and dishonest persons to make contracts with copartnership contractors, who have not complied with the law, and after the work is done no compensation can be recovered therefor. The same fears could be entertained as to the existence of our usury statute. One desirous of a loan could apply to a person, who is unfamiliar with the law, and agree to pay the tax on the loan in addition to the highest rate of interest allowed by law, and after the term has ended could thereby avoid the entire interest. Because this might be done it would hardly furnish a reason for the abrogation of the usury law. Under this police regulation, as under many others passed for the protection of the public, some hardships necessarily result from its enforcement, but the construction which holds contracts made in violation of law void and unenforceable,

will in the long run bring better results to the public than would a construction which enables the wrongdoer to escape the consequences of his unlawful omission because strong equities are at stake.

The judgment of the trial court is affirmed, with costs of this court to defendant.

OSTRANDER, C. J., and STEERE, FELLOWS, and STONE, JJ., concurred with BIRD, J.

KUHN, J. (*dissenting*). I have become convinced, upon the rehearing of this case, that we arrived at a wrong conclusion in the opinion written by Mr. Justice BIRD. If we are to give to this statute (Act No. 164, Pub. Acts 1913) the interpretation placed upon it in that opinion, to my mind it will open the door to fraud and serious damages to innocent parties who may have acted in the best of faith. Let us suppose a case where a person desires to have a building constructed. He examines the records and finds that certain contractors whose names are well known to him, have not complied with the statute. He contracts with them, and after the building is completed, calmly announces that he will not pay for the same because the men who have furnished the money, time and skill to complete the structure, have failed to comply with a statute which required the contractors to give him information which he already possesses. Under the decision as made the contractors could not recover. No result leading to such palpable injustice should be arrived at if it can be avoided. That the statute in question need not be given such a construction is now quite clear to me. In *Cashin* v. *Pliter*, 168 Mich. 386, in construing Act No. 101, Pub. Acts 1907, Mr. Justice STEERE said:

"The general rule is well settled that, where statutes enacted to protect the public against fraud or

199—Mich.—34.

imposition, or to safeguard the public health or morals, contain a prohibition and impose a penalty, all contracts in violation thereof are void."

Let us examine the statute before us. Its title is:

"An act to require the filing of certificates of copartnership, fixing the liability of copartners and providing a penalty for violation of the provisions of this act."

Section 2 provides:

"In case there shall be at any time after the making and filing of said certificate, any change in the name or style of said firm, or in the time of its existence, then a new certificate, verified as before specified, shall in like manner be filed as required by section one of this act, before such change shall take effect; and until such new certificate shall have been made and filed, as above specified, *the individual members of the firm, as set forth in the certificate on file, shall be held to be the actual members of the firm, and in all respects holden and liable for any obligation, debt or liability, incurred by the said copartnership.*"

This section plainly seems to contemplate that business will be transacted by persons who have not complied with it. A careful examination of the act leads to the irresistible conclusion that it was not passed for the purpose of making null and void contracts entered into by partnerships which have not filed the certificate required by this act, but only to inform the public of the true membership of a firm so as to enable one dealing with said firm to be absolutely advised of the individual responsibility of the members of such firm and under the second section to sue those whose names have been registered and who have not signified their withdrawal by an amended certificate. A study of the case of *Cashin* v. *Pliter, supra,* shows that the court bases its conclusion therein upon the ground that the statute therein under discussion was of that class of statutes which are passed to protect

the public against fraud or imposition, or to safeguard the public health or morals, and that when such statutes contain a prohibition and impose a penalty, all contracts in violation thereof are void. Before the right of private contract, which is no small part of the liberty of the citizen, is taken away, we should, in·the language of the opinion of *Cashin* v. *Pliter, supra,*—

"carefully scrutinize the particular statute under advisement, for the purpose of ascertaining, from the subject-matter and language used, the object for which it was enacted and the intent of its makers, to the end that such intent may be rendered effectual and the indicated purpose accomplished."

Clearly the legislature did not intend to hold contracts of the character here involved void, for if they had, in view of the decision in *Cashin* v. *Pliter,* which was before them, they could easily have said so. The Michigan cases up to the passage of this act have held a contract prohibited by law as void, in which the thing prohibited was bad in itself. *Niagara Falls Brewing Co.* v. *Wall,* 98 Mich. 158; *In re Reidy's Estate,* 164 Mich. 167; and *Cashin* v. *Pliter, supra.* The act here prohibited is not *malum in se,* and I think that counsel were right when they said that this statute—

"is a mere regulation designed to have record evidence of the membership of partnerships; it is nothing more than a convenience, to enable those who are not aware of the names of partners composing a firm, to readily ascertain them."

I am aware that in *Sloman* v. *Bender,* 189 Mich. 258, we had this statute under consideration, but an examination of the record and briefs in that case discloses that the point now under discussion with reference thereto was not especially considered. While the court did say in reference to the two acts (Act No. 101, Pub. Acts 1907, and Act No. 164, Pub. Acts

1913), "The two acts are along the same lines," the point which was argued in the briefs of counsel and on which the case turned, was that attorneys, when associated as partners, occupied no different position with reference to these statutes than other persons. Counsel for plaintiffs and appellants in that case say in their brief:

"Concisely stated, the only proposition involved in the appeal is: Is the practice of the law a profession or a business?"

The decision in that case is, therefore, not controlling of the question now before us.

The judgment should be reversed and a new trial ordered.

MOORE and BROOKE, JJ., concurred with KUHN, J.