# Wadsworth v. Dunnam.

*Action on Promissory Note.*

1. *Promissory note; settlement of account by note does not preclude maker from setting up illegality of consideration.*—By the giving of a promissory note in settlement of an account, the maker does not waive his right, when sued on said note to set up as a defense that

[Wadsworth v. Dunnam.]

part of the goods included in said account were sold in violation of the penal statutes of the State.

2. *Sunday laws; sales on Sunday invalid.*—Any selling on Sunday, except for the advancement of religion, or in the execution or for the performance of some work of charity, or in case of necessity, is, under the statute (Code of 1886, § 1749; Code of 1896, § 2170) void.

3. *Action on a note; trial and its incidents; right of jury to carry articles offered in evidence with them in retirement.*—In an action on a promissory note, which was given in settlement of an account for goods sold and delivered containing items for the price of "Ginseng Cordial," where one of the issues is as to whether the "Ginseng Cordial" sold to the defendant was intoxicating, and, therefore, its sale was prohibited by local statutes in force in the locality at the time of the sale, it is not permissible to introduce in evidence bottles of such cordial to be taken by the jury on their retirement "to be smelled, or drank or tasted," as the jury or any number of them chose.

4. *Action on a promissory note; examination of witness; extent of re-direct examination.*—In an action on a promissory note, which was given in settlement of an account for goods sold and delivered, containing items for the price of "Ginseng Cordial," where one of the issues is as to whether the "Ginseng Cordial" sold to the defendant was intoxicating, and, therefore, its sale was prohibited by local statutes in force in the locality at the time of the sale, upon a witness, introduced by the defendant, after having testified on direct examination simply as to the ingredients of the cordial, further testified on cross-examination that such ingredients had medicinal properties and that the cordial was not intoxicating, it is permissible for the defendant, on re-direct examination of such witness, to ask him, if it was not a fact that one of the ingredients had no medicinal properties, and that the United States dispensatory had so stated.

5. *Promissory note; illegality of consideration.*—If the consideration of a note is partly illegal, the whole note is void; and where a note is given in the settlement of an account for goods sold and delivered, which account, in addition to legal items, contains items for goods sold on Sunday, and also items of charge for the price of liquors, the sale of which was prohibited by a local statute in force at the time and within the locality of the sale, such note being entire and indivisable, is void, and hence there can be no recovery thereon.

6. *Action on a promissory note; charge when part of consideration is the price of intoxicating bitters.*—In an action on a promissory note, which was given in settlement of an account for goods sold and delivered containing items for the price of "Ginseng Cordial," where one of the issues is as to whether the "Ginseng Cordial" sold to the defendant was intoxicating, and, therefore, its sale was prohibited by local statutes in force in the locality at the time of the sale, a charge is erroneous which instructs the jury that "If the jury believe from the evidence that the compound or cordial included in Wadsworth's account was not reasonably susceptible of being used as an intoxicat-

[Wadsworth v. Dunnam.]

ing beverage, then its sale is not prohibited by law, and the notes sued on would not be invalid on account of the sale of such bitters."

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. GEORGE E. BREWER.

This action was brought by the appellees against the appellant; and counted upon eight promissory notes, executed by the defendant to the plaintiffs. This is the second appeal in the case. After the remandment of the cause, the defendant filed several pleas, setting up as a defense want of consideration and failure of consideration. There were among the number of special pleas filed two pleas, the substance of which is sufficiently stated in the opinion. The demurrers to these pleas, the grounds of which are also shown in the opinion, were sustained.

The plaintiffs introduced in evidence the notes sued on; and it was agreed by the parties to the cause that said notes were given by the defendant to the plaintiffs in settlement of an account made by the defendant with the plaintiffs. The defendant introduced in evidence plaintiffs' books containing said account, made by defendant during the years 1890 and 1891, in which account were sundry items of sale of Ginseng Cordial, charged as "B. B." Said account contained also sundry items of goods, wares and merchandise purporting to be charged on Sunday. Said Ginseng Cordial was sold by the plaintiffs to the defendant in beat No. 4, Shelby county, Alabama, during the years 1890 and 1891. The defendant introduced in evidence an act of the General Assembly of Alabama, found on page 613 of the Acts of 1882–83, prohibiting the sale of intoxicating bitters or beverages in precinct No. 4 of Shelby county.

The evidence on the part of the defendant tended to show that said Ginseng Cordial was intoxicating bitters or beverages. The evidence on the part of the plaintiffs tended to show to the contrary. The defendant offered to hand to the jury and to introduce in evidence two bottles labelled "Ginseng Cordial," and purporting to be Ginseng Cordial, and to have been prepared and put up by Nabors, Morrow & Sinnige, of Birmingham, to be smelled, or drank, or tasted by the jury, as they might see proper. The plaintiffs objected to the introduction of said bottles for such purpose, and the court sustained

the objection, and said bottles and contents were excluded from the evidence. To this ruling of the court the defendant excepted. The evidence on the part of the defendant tended to show that there were no medicinal properties in the ingredients mentioned as the component parts of Ginseng Cordial.

The defendant introduced as a witness in his behalf Dr. W. S. DuBose, who testified that he had been practicing medicine forty years. Witness was requested to taste the contents, respectively, of two one ounce phials and state what the contents were. He testified, after having tasted, that the one contained in his opinion a mixture of tincture of cinchona and red pepper, and the other tincture of Ginseng. Here the defendant announced that he did not wish to ask the witness any further questions. Then the plaintiffs asked the witness if he had ever drank Ginseng Cordial, to which he replied that he had not, that when he drank at all he drank whiskey ; that he had seen the formula of Ginseng Cordial, manufactured by Nabors, Morrow & Sinnige, of Birmingham, and had been in that establishment when the same was being prepared in bulk, and had seen the various ingredients of which it was made weighed, measured and mixed. Witness was then asked by the plaintiff, if, in his opinion, said Ginseng Cordial was intoxicating? The defendant objected to the question unless the plaintiffs make the witness their own witness as to such matters, upon the ground that said matters were not germane to those inquired about on the direct examination. The court ruled that the defendant had made the witness his own witness by introducing him, and that the plaintiffs had a right to examine him on all matters pertinent to the issue, and then overruled defendant's objection. To this ruling of the court the defendant separately excepted. Witness answered that in his opinion Ginseng Cordial was not intoxicating, and that in his opinion it was not reasonably susceptible of use as an intoxicant or as a substitute for ordinary intoxicating beverages ; and that Ginseng Cordial contained medicinal properties. Witness was then shown the label and bottle and read therefrom what purported to be the formula for said Ginseng Cordial, and testified that the ingredients named all contained medicinal properties. The defendant on redirect examination

asked the witness, If it was not a fact that there were no medicinal properties in Ginseng, one of the ingredients named in said formula, and if the United States Dispensatory did not so hold? The plaintiffs objected to the question upon the ground that the defendant had made the witness his own by introducing him and could not, therefore, ask questions to discredit, contradict or impeach him. The court sustained the objection, and refused to allow the question to be answered. To this ruling of the court, the defendant excepted. There was evidence tending further to show that the said bitters offered in evidence were the same as that charged to defendant in plaintiffs' said account.

F. P. Dunnam, one of the plaintiffs, testified that during the time of the running of defendant's account he had the entire charge of plaintiffs' business; that he had examined the items in plaintiffs' said books purporting to have been charged on Sundays; that by comparison of the day book with the ledger some of the Sunday dates were errors in posting, and in some cases the day book bore date of Sunday instead of Monday, the date of Monday being entirely omitted; that he did no business on Sunday, and that Mondays and Saturdays were his busiest days; that during the time of the making of said account plaintiffs' business was conducted in a log house which was so constructed that the only means of obtaining light during the day was from the front door—there being no other opening in the front or rear of said house, and that when he was in the house on Sundays, as he sometimes was, he often left the front door open; that he had no recollection of ever having sold defendant anything on Sunday, or of having charged any such items, but might have sold him something in one or two instances, as a matter of special accommodation.

The evidence on the part of the defendant further tended to show that the plaintiffs sold goods on Sundays during the time covered by the account with open doors, while the evidence of the plaintiffs tended to show to the contrary. This was substantially all the evidence in the case.

The court gave to the jury, at the request of the plaintiffs, the following written charges: (1.) "If the jury believe from the evidence that the compound or cordial included

in Wadsworth's account was not reasonably susceptible of being used as an intoxicating beverage, then the sale is not prohibited by law, and the notes sued on would not be invalid on account of the sale of such bitters." (2.) "If the jury believe from the evidence, that the plaintiff, Dunnam, kept his doors open on Sunday, for the purpose of obtaining light and air, and not for the purpose of trading, then a casual sale on Sunday would not be a violation of penal law, and an item in the account so sold would not avoid the notes." (3.) "If the jury believe from the evidence, that other ingredients were necessary to be added to the bitters in question to produce intoxication; and that these other ingredients were separately bought and mixed by the defendant to produce intoxication, the sale of the cordial was not violative of the prohibitory law, and would not invalidate the notes sued on." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by him: (1.) "The court instructs the jury, that it is the duty of the jury to examine the books offered in evidence in connection with the almanac to ascertain if any items charged against the defendant were sold on Sunday, and if they find from the evidence that any item charged in the account was sold on Sunday, then they will find the verdict for the defendant." (2.) "If the jury believe from the evidence, that the bitters were susceptible of use as a stimulating beverage, then the jury will find for the defendant." (3.) "If the jury believe from the evidence, that any item in defendant's account was sold on Sunday to defendant, then they will find the verdict for the defendant." (6.) "If the jury believe from the evidence, that any item in defendant's account was sold to him on Sunday, then the jury will find for the defendant, whether the plaintiffs kept open doors at the time of the sale or not." (7.) "The court instructs the jury that the defendant is not required to prove his plea by a preponderance of the evidence."

There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

[Wadsworth v. Dunnam.]

W. R. OLIVER and W. S. CARY, for appellants.—A consideration in part illegal will entirely void the contract.—1 Brick. Dig., 382, § 116.

The sale was void by section 1749 of the Code. A note given for property sold on Sunday· is invalid. *Thornhill v. O'Rear*, 108 Ala. 299 ; 1 Brick. Dig., 378, §§ 53, 54, 55, 58 ; Benj. on Sales, 542.

LONGSHORE & BEAVERS and E. S. LYMAN, *contra*, cited *Wadsworth v. Dunnam*, 98 Ala. 610 ; *McWilliams v. Phillips*, 71 Ala. 80 ; *Lehman v. McQueen*, 65 Ala. 570 ; *Dixon v. State*, 76 Ala. 89 ; *Shulman v. Brantley*, 50 Ala. 81.

BRICKELL, C. J.—When the case was before the court at a former term (*Wadsworth v. Dunnam*, 98 Ala. 610), the only plea was, that the promissory notes, the foundation of the action, were given on the settlement of an account for goods sold and delivered, containing items of charge for the price of Ginseng Cordial, an intoxicating liquor, the sale of which was prohibited by a local statute of force, at the time, within the locality of the sale. Upon the reversal of the former judgment and the remandment of the cause, the defendant filed several additional pleas, to two of which demurrers were interposed and sustained, and this ruling is the matter of the first and second assignments of error.

The first of the pleas avers, that the notes were given in settlement of an account made by the defendant with the plaintiffs, containing lawful charges, and charges for intoxicating bitters or beverages sold by the plaintiffs to the defendant, in violation of the local statute to which reference has been made. The causes of demurrer specified to the plea were, that the suit was upon notes and not upon an account ; and that the defendant by the giving of the notes had waived his right to interpose the plea. The second plea averred, that the notes were given in settlement of an account made by the defendant with the plaintiffs, the account including items of charge for goods, wares and merchandise sold the defendant by plaintiffs on Sunday, and that the sale was not for the advancement of religion, or in execution, or for the performance of some work of charity, or in case of necessity. The cause of demurrer assigned to this plea

was, that the sale on Sunday was not in violation of law, or under circumstances which would make it a violation of penal law.

The statute (Code of 1886, § 1749; Code of 1896, §2170), declares that "All contracts made on Sunday, unless for the advancement of religion, or in the execution, or for the performance of some work of charity, or in case of necessity, are void." The second plea corresponds to the words of the statute, and affirms the sale on Sunday, negativing the existence of any of the facts or conditions which would withdraw it from the interdiction of the statute. As matter of fact the demurrer was illy taken, for the plea does allege that the sales were in violation of law; and it was unnecessary to aver that they were offensive to the statute, rendering the doing of particular acts on Sunday indictable misdemeanors, (Cr. Code of 1886, § 4045; Cr. Code of 1896, §5542). A merchant or shop-keeper making a single sale on Sunday, may not violate that statute, or he may violate it, subjecting himself to its penalties, by the keeping open store without making any sale.—*Dixon v. State*, 76 Ala. 89. But without offending the statute first referred to he cannot make a sale, or any other contract, unless the facts or conditions exist, which withdraw it from the operation of the statute. A sale with closed doors, would be as invalid, as a sale with open doors.—*Burns v. Moore*, 76 Ala. 339. The demurrer to the plea should have been overruled.

The first plea constituted a full defense to the action, and the demurrers to it ought not to have been sustained. As we will have occasion hereafter to show, if any part of the consideration of the notes was illegal—if it grew out of the doing any act, or was part of any transaction prohibited by law—the notes are void *in toto*.

The proposal that the jury on their retirement should take with them bottles of the kind of cordial sold defendant by the plaintiffs, "to be smelled, or drank, or tasted," as the jury, or any number of them chose, was properly overruled. The purpose was that the jurors, if indulging the opportunity afforded them, from personal experience, should determine the controverted fact whether the cordial was intoxicating. Laying aside all other objections, it is enough to say, if the cordial was intoxicating, as insisted by the defendant, it was the

duty of the court to prohibit, not to license its introduc-
tion into the jury room. And if it had been introduced,
and by its use the jurors had acquired knowledge, or
formed any opinion as to its properties or qualities, the
one juror could not have communicated his knowledge
or opinion to another. "A juror on trial who has knowl-
edge of any material facts, must give notice, so that he
can be sworn, examined and cross-examined. He can
not be permitted to give evidence to his fellow jurors
without being so sworn."—1 Whart. Ev., § 602. The
books abound with instances in which new trials have
been granted, because jurors, forgetting that they were
not witnesses, have in their retirement communicated
their knowledge of facts material to the issue on which
a verdict was to be rendered.

The question propounded to Dr. Dubose on his re-ex-
amination was not subject to the objection taken, and
the court erred in sustaining it. The matter of the
cross-examination was directed to an inquiry into the
ingredients of which Ginseng Cordial was compounded,
and of their medicinal properties or qualities, new mat-
ter not involved in the examination in chief. Generally,
the purpose of a re-examination is to elicit fuller evi-
dence in respect to the matters, the subject of the cross-
examination, or it may be explanatory, or contradictory
of the testimony given on cross-examination. The gen-
eral principle is, that a party is not permitted to impeach
the general reputation of a witness he has introduced
and examined, nor can he by general evidence assail his
credibility.—1 Green. Ev., § 442. But it is his right by
any competent evidence to prove any material fact,
though it may be directly contradictory of the testimony
of the witness he has introduced and examined.—1
Green. Ev., § 446. Until the re-examination, the de-
fendant had not the opportunity to examine the witness
as to the ingredients of which the cordial was com-
pounded, and the presence or absence of medicinal prop-
erties in them. It can not be that he had not the right
to propound all questions to the witness, which he could
have propounded in the examination in chief. If the ten-
dency of the evidence was the contradiction of the wit-
ness, thereby casting upon him more or less of discredit,
it had an equal tendency to show that he may have
erred in his judgment—may have fallen into an in-

[Wadsworth v. Dunnam.]

nocent mistake. In whatever aspect the evidence may be viewed, it was admissible.—*White v. State*, 87 Ala. 24; *Griffith v. State*, 90 Ala. 583.

The doctrine of the common law, as it is laid down in the text books, and supported by numerous adjudications, is, that, "if any part of the entire consideration for a promise, or any part of an entire promise is illegal, whether by statute or at common law, the whole contract is void. Indeed, the courts go far in refusing to found any rights upon wrong doing."—1 Parsons on Contracts, 456; 1 Parsons, Notes & Bills, 217; 1 Dan. Neg. Ins., § 195; Story, Prom. Notes, § 189; Bishop on Contracts, § 471; Clark on Contracts, 472; 1 Smith Lead. Cases (8th ed.) 736; *Carrington v. Caller*, 2 Stew. 175; *Pettit v. Pettit*, 32 Ala. 308; *Wynne v. Whisenant*, 37 Ala. 46; *Patton v. Gilmer*, 42 Ala. 548; *Cotten v. McKenzie*, 57 Miss. 418; *Widoe v. Webb*, 20 Ohio St. 431; *Deering v. Chapman*, 22 Me. 488; *Kidder v. Blake*, 45 N. H. 530. There has not, perhaps, been more frequent application of the doctrine than to promissory notes, or other evidences of debt, taken in settlement of accounts for goods, wares, or merchandise, items of which were for goods sold on Sunday, or for spirituous liquors sold in violation of law. The accounts may have contained items having no connection with the illegal sales; items for goods not sold on Sunday, or items for the sales of goods not prohibited. When all are blended, and a promissory note is taken for the whole, the note is entire and indivisible, and upon it there can be no recovery.—*Cotten v. McKenzie, supra*; *Widoe v. Webb, supra*; *Deering v. Chapman, supra*; *Kidder v. Blake, supra*.

The complaint declares on eight several promissory notes and the uncontroverted fact is, that these notes were given in settlement of an account for goods and merchandise sold by the plaintiffs to the defendant. And there was evidence tending to show that some of the sales were made on Sunday, and some were of Ginseng Cordial, an intoxicating drink, in violation of a law prevailing in the locality of sale, rendering such sale an indictable offense. If there were items of the account closed by the notes, not tainted with illegality—unconnected with the illegal sale—the plaintiffs could have maintained an action on the original contracts of sale, though the notes had been taken. The notes, if tainted with illegality, are utterly

[Wadsworth v. Dunnam.]

void; incapable of discharging the just indebtedness of
the defendant. But the plaintiffs chose to declare on
the notes alone, not joining a count for goods sold. The
notes are *prima facie* evidence of indebtedness, and upon
the defendant was cast the burden of showing to what
extent the consideration was illegal, "and upon the
court the task of separating the sound from the un-
sound." Adopting the language of the court in *Widoe
v. Webb*, *supra*: "If this effort should result in the
plaintiffs losing what was justly due them, we can but
repeat what was said in a similar case. It is but a
reasonable punishment for including with his just due
that which he had not the right to take." In the view
we have taken, the court below erred in the refusal of
the first, third and sixth instructions requested by the
defendant; and in the second instruction given on re-
quest of plaintiffs.

The first instruction given at the instance of the
plaintiffs is in conflict with the views expressed, when
this case was here at a former term (*Wadsworth v. Dun-
nam*, 98 Ala. 610), and should have been refused. The
instruction is, in fact, but a repetition of the fourth in-
struction given at the instance of the plaintiffs on the
former trial, and which was pronounced erroneous. We
will not enter into a discussion of the ingredients or
properties of "intoxicating bitters or beverages," the
words employed in the prohibitory statute. We can add
nothing upon this point to what was said and decided
when this case was before the court formerly; and to
what was said and decided in the preceding cases.—*Car-
son v. State*, 69 Ala. 236; *Carl v. State*, 87 Ala. 17, and
authorities cited.

The third instruction given at the instance of the
plaintiffs was erroneous, in assuming as a fact, that to
produce intoxication, other ingredients were added to
the cordial by the defendant. The bill of exceptions
purports to state all the evidence, and is without any
evidence having a tendency to show such addition.
Whether the error of the instruction should not have
been cured by a request from the defendant for an ex-
planatory instruction, we need not consider; on another
trial, it is not to be apprehended a like instruction will
be given. The burden rested on the defendant, by evi-
dence, to produce on the minds of the jury a reasonable

[Postal Telegraph Cable Co. v. Ford.]

conviction of the truth of his pleas, and it would have aided them but little, if it would not have confused them, to have said that the defendant was not required to prove the truth of the pleas by a preponderance of the evidence.—*Hopper v. Ashley,* 15 Ala. 457; *Vandeventer v. Ford,* 60 Ala. 610.

For the errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.